IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No. 1:16-cv-10

| PAUL J. CASTRO, | |
|---|---|
| Plaintiff, | |
| v. | BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS |
| DAVID GOGGINS, | |
| Defendant. | |

Pursuant to Rules 7 and 12(b)(6) of the Federal Rules of Civil Procedure and Local Rules 7.2 and 7.3, Defendant David Goggins ("Goggins") respectfully submits this Brief in Support of Defendant's Motion to Dismiss.

## NATURE OF THE MATTER BEFORE THE COURT

This action arises out of a failed relationship between two individuals who, over the course of approximately seven years, had various on-and-off communications about making a movie together, but could never agree on how to do so. Plaintiff now asks that he be compensated for the breach of an alleged contract between the parties, but even he cannot pinpoint what was breached, whether it was a "contract" or an "agreement," the substance of such agreement, exactly when or how it was breached, or whether defendant merely "attempted" to breach. (*See* Compl. Prelim. Statement, ¶¶ 26-32.) Plaintiff instead strings together seven years' worth of occasional informal communications

between the parties, hoping that the Court will glean from somewhere within them a valid contract.

Plaintiff's claim fails. Even accepting plaintiff's allegations as true, there was never a valid and enforceable contract entered in this case. Moreover, even if, as plaintiff alleges, the "agreement" that the parties entered into in 2008 was enforceable, which it was not, any claim for breach based on that alleged "agreement" would be barred by the statute of limitations. At best, given the absence of any enforceable contract, plaintiff's claim essentially seeks recovery on the basis of "offensive" promissory estoppel; however, no such claim is recognized in North Carolina. Accordingly, plaintiff's complaint should be dismissed with prejudice.

## STATEMENT OF THE FACTS

The relevant facts, as alleged by plaintiff Paul J. Castro ("Castro") in his complaint, are as follows.[1] Castro is a professional screenwriter who has written screenplays for movies and television. (Compl. ¶ 7.) Goggins is a former Navy SEAL who has gained fame for his performance as an ultramarathon runner, ultra-distance cyclist, and triathlete. (*Id.* ¶ 9.) Castro and Goggins met in or around late 2001, while Castro was working as a public affairs officer for the Navy SEALs. Castro and Goggins thereafter developed a close friendship. (*Id.* ¶ 8.)

In 2008, Castro and Goggins discussed the idea of Castro writing a screenplay for a movie depicting Goggins' life story. (*Id*. ¶ 9.) On October 15, 2008, a handwritten

---

[1] Goggins treats the factual allegations of the complaint as true for purposes of this Motion to Dismiss only.

document was allegedly created (the "2008 handwritten document"). The 2008 handwritten document is not attached to the complaint. There is no allegation in the complaint as to who authored it. There is no allegation as to whether it was signed by either of the parties. It is alleged to say only the following:

> This confirms that Paul Castro and David Goggins will partner on the feature film project about David Goggins' life story. Paul Castro will be the sole screenwriter.

(Compl. ¶ 9.) Approximately two weeks later, Castro had drafted a script for the movie. (*Id.* ¶¶ 9-10.)

In early 2009, Castro asked Goggins whether he would agree to execute "a more detailed memorialization" of the 2008 handwritten document. (*Id.* ¶ 12.) Goggins indicated his intention to do so in the future, but was "in no hurry" because they already had a "signed paper" and Goggins had given Castro his "word about the movie." (*Id.*) Plaintiff's complaint does not allege that any "more detailed memorialization" of the 2008 handwritten document was ever created, despite Castro's desire and request for such a document.

Nevertheless, Castro "continued to move forward to aggressively prepare the script for production." (*Id.* ¶ 13.) By May 2009, Castro had "identified" an actor to play Goggins in the movie, "recruited" a producer for the movie, and assigned the movie a name. (*Id.*)

In or around July 2009, Castro shared a copy of the script for the movie with Goggins. Goggins indicated that the facts were inaccurate and needed to be changed.

3

(*Id*. ¶ 14.) Castro told Goggins that he would change the script because he wanted Goggins to "feel good" about it. (*Id.*). Goggins stated that he would "be good with the movie" if Castro was "willing to make changes." (*Id.*)

By October 2009, a year had passed since Castro first produced a draft of the script. On October 10, 2009, Goggins told Castro: "So far as I'm concerned this is over." (*Id*. ¶ 15).

After Goggins told Castro "this is over" in October 2009, there is a two year span of time in which no activity or communications between Castro and Goggins are alleged to have occurred. Rather, the complaint alleges that it was in "late 2011" when Castro and Goggins "resumed" their "business and personal relationship." (*Id*. ¶ 16.)

In January 2012, the parties revisited Castro's script. Goggins recognized the work that Castro had done on the script in the past and told Castro that he was "happy that you would take time to write about me." (*Id.*) Goggins once again voiced his previously stated concerns about the script's accuracy, stating that he would want "to talk about making it more about what really happened." (*Id.*) However, Goggins told Castro that he would "truly understand" if Castro chose to "not do the script at all." (*Id.*)

Following these communications, Castro alleges that he spent nearly the next three years "revis[ing] and refin[ing]" his script for the movie, producing "dozens of versions of the script." (*Id*. ¶ 17.) The complaint alleges no communications between Castro and Goggins throughout this three-year period.

4

On December 19, 2014, Castro asked Goggins whether they were "a go with [the] screenplay." (*Id.*) Goggins replied, "I love it we are all done [with the script]." (*Id.*) During some unspecified time period, Castro did "other work" relating to producing a film, such as recruiting a producer and cinematographer, obtaining a "funding commitment for the movie's production," and "personally advanc[ing] certain expenses" unspecified in amount or nature. (*Id.* ¶ 18.)

However, as late as 2015, Castro continued to seek "reassurance" from Goggins that he would have the right to write and direct a film about Goggins and to write a book of Goggins' "life story." (*Id.* ¶ 19.) On February 18, 2015, Goggins wrote an email[2] to Castro (the "2015 email") stating that it would serve as a "legal document" that Castro was "the only person that I grant the right to write and direct the feature film version of my life story and the book version as well." (*Id.*) The 2015 email specified that "[a] more detailed version of this document is to come." (*Id.*) There is no allegation in the complaint that a "more detailed version" of the 2015 email was ever forthcoming. Indeed, just one week later, Goggins "refused to move forward with the venture." (*Id.* ¶ 21.)

Approximately nine months later, in November 2015, Jesse Itzler published a book about living with Goggins for 31 days. (*Id.* ¶ 23.) Although the book allegedly "contains and recounts information" about Goggins' "life, experiences, and history," there is no allegation that it purports to tell Goggins' "life story." (*Id.*) In late 2015,

---

[2] While the form of the communication is not clear in paragraph 19 of the complaint, paragraph 27 of the complaint indicates that it was an email.

Goggins sent an email to Castro stating that he "revoked any and all rights that may have been granted" to Castro in the 2015 email. (*Id.* ¶ 27.)

On January 8, 2016, Castro filed his complaint in this action in the United States District Court for the Middle District of North Carolina. (ECF No. 1.) The complaint alleges a single claim for breach of contract, predicated upon the allegations described above.[3]

## **QUESTIONS PRESENTED**

I. WHETHER CASTRO'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED BECAUSE NO VALID CONTRACT EVER EXISTED BETWEEN THE PARTIES.

    A. WHETHER THE 2008 HANDWRITEN DOCUMENT FAILED TO ESTABLISH A VALID CONTRACT AS A MATTER OF LAW FOR LACK OF DEFINITENESS.

    B. WHETHER THE 2015 EMAIL FAILED TO ESTABLISH A VALID CONTRACT AS A MATTER OF LAW FOR LACK OF DEFINITENESS.

II. WHETHER CASTRO'S BREACH OF CONTRACT CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS TO THE EXTENT THAT IT SEEKS RECOVERY WITH RESPECT TO THE 2008 HANDWRITTEN DOCUMENT.

III. WHETHER THE REMAINING ALLEGATIONS IN THE COMPLAINT FAIL TO ESTABLISH A VALID CLAIM AS A MATTER OF LAW.

---

[3] The complaint also makes numerous allegations relating to the relationship between Goggins and Jesse Itzler, whom Castro describes as a "New York entrepreneur." (Compl. ¶¶ 1, 22, 25.) These allegations are immaterial for purposes of Castro's claim for breach of contract and this Motion. Indeed, paragraphs 23 and 25 are particularly irrelevant to any legal claim that plaintiff attempts to assert and appear to be plaintiff's use of the complaint as a vehicle for airing personal grievances or attempting to disparage Mr. Goggins.

6

## LEGAL STANDARD

This Court has recently stated the standard that governs a Rule 12(b)(6) motion to dismiss as follows:

> "In order to survive a motion to dismiss, a complaint 'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although a reviewing court must accept the complaint's factual allegations as true on a motion to dismiss, legal conclusions are not entitled to the presumption of truth. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

*Covington v. Randolph Hosp., Inc.*, No. 1:15CV343, 2015 WL 7755445, at *2 (M.D.N.C. Dec. 1, 2015).

## ARGUMENT

### I. CASTRO'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED BECAUSE NO VALID CONTRACT EVER EXISTED BETWEEN THE PARTIES.

"The elements of a claim for breach of contract are the existence of a valid contract and a breach of the terms of that contract." *Cole v. Champion Enters., Inc.*, 496 F.Supp. 2d 613, 621–22 (M.D.N.C. 2007). Here, the allegations in the complaint reveal that no contract ever existed between the parties. As such, Castro has failed to state a claim for breach of contract, and the complaint should be dismissed with prejudice.

#### A. The 2008 Handwritten Document Failed to Establish a Contract As a Matter of Law Because It Was Indefinite and Omitted Material Terms Necessary for Contract Formation.

It is well established that "'[a] contract must be sufficiently definite in order that a court may enforce it.'" *Pearsall v. Select Portfolio Servicing, Inc.*, No. 7:15-CV-106-FL,

7

2015 WL 9223076, at *3 (E.D.N.C. Dec. 17, 2015) (quoting *Brooks v. Hackney*, 329 N.C. 166, 170, 404 S.E.2d 854, 857 (1991)).  This Court has explained the "definiteness" requirement for a valid contract as follows:

> It is hornbook law that, to be enforceable, the terms of a contract must be sufficiently definite and certain.  A contract leaving material portions open for future agreement is nugatory and void for indefiniteness. In addition to setting forth its terms with the requisite level of certainty, to be enforceable a contract must contain an expression of mutual assent. That is, a manifestation of intent wherein it is necessary that the minds of the parties meet upon a definite proposition. There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense.

*Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F. Supp. 2d 386, 399-400 (M.D.N.C. 2003) (citations and quotation marks omitted).  Moreover, "'[i]f any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement.'"  *Pearsall*, 2015 WL 9223076, at *3 (quoting *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974)).

The case of *Preservation Professional Services, LLC v. M2 Pictures, LLC*, No. 3:14-CV-589-RJC-DCK, 2015 WL 3659506 (W.D.N.C. May 5, 2015), is instructive.  There, the court dismissed a breach of contract claim because the alleged contract omitted material terms of the parties' agreement.  The defendant in that case allegedly promised to feature and promote the plaintiff's construction work on its television show in exchange for the plaintiff's services, and the plaintiff spent money promoting the show and "hundreds of hours communicating and meeting with Defendants" in reliance on their agreement.  *Id.* at *2-3.  The defendants ultimately hired a different contractor, however, and never featured the plaintiff's work on its show.  *Id.*

8

In addressing the plaintiff's breach of contract claim, the *M2 Pictures* court observed that the plaintiff's complaint "lack[ed] any explanation of when or where any contract was formed, or the terms of such contract(s)"; did "not include copies of any purported contracts" or "address the apparent absence of such documentation"; and "d[id] not establish any time frame for when [the defendant's show] would be televised and/or when [the plaintiff] would be featured or promoted." *Id.* at *4. The court thus dismissed the breach of contract claim because "it d[id] not appear that Plaintiffs adequately allege[d] a meeting of the minds as to all essential terms of an agreement." *Id.* at *5.

Here, just as in *M2 Pictures*, plaintiff did "not include copies of any purported contracts" or "address the apparent absence of such documentation." *Id.* at *4. Plaintiff does not even allege whose handwriting appears on the 2008 handwritten document, much less whether both parties actually *signed* it – a basis for dismissal in and of itself. *Parker v. Glosson*, 182 N.C. App. 229, 230, 641 S.E.2d 735, 736 (2007) (concluding that no valid contract existed between the parties where only one party signed the alleged agreement and thus affirming trial court's Rule 12(b)(6) dismissal of breach of contract claim); *see also Jiangmen Kinwai Furniture Decoration Co. v. IHFC Props., LLC*, No. 1:14-CV-689, 2015 WL 5944278, at *5 n.4 (M.D.N.C. Oct. 13, 2015) (noting that plaintiff did "not allege facts sufficient to impose liability for breach of contract and other contract-based claims on parties who did not sign the contract at issue").

Moreover, the 2008 handwritten document allegedly provides, in its entirety, nothing more than the following:

> This confirms that Paul Castro and David Goggins will partner on the feature film project about David Goggins' life story. Paul Castro will be the sole screenwriter.

(Compl. ¶ 9.)

Like the alleged contract in *M2 Pictures*, the 2008 handwritten document fails to establish a valid contract because it fails to show "a meeting of the minds as to all essential terms of an agreement." *M2 Pictures*, 2015 WL 3659506, at *5. It did not "establish any time frame" for doing anything. *Id.* at *4. It says nothing about when the Agreement would take effect, what the contemplated partnership would entail, how long the Agreement would last, how compensation would be determined, and what would happen if either party simply determined to no longer pursue the project. Indeed, it is clear that Goggins did not think Castro had any binding obligation to perform, as he told Castro he would "truly understand" if Castro chose to "not do the script at all." (Compl. ¶ 16.) Even assuming that Castro really believed that he had an obligation under some contract, that is irrelevant if Goggins thought otherwise and there was no meeting of the minds. *Clay v. Citimortgage, Inc.*, No. 1:08CV925, 2011 WL 3511579, at *4 (M.D.N.C. Aug. 11, 2011) ("A contract does not exist if 'one party simply believes that a contract exists, but there is no meeting of the minds.'") (citation omitted), *aff'd sub nom. Clay v. C T Corp. Sys.*, 463 F. App'x 200 (4th Cir. 2012).

Without the essential material terms and meeting of the minds required for a valid contract, the 2008 handwritten document is unenforceable as a contract because it is unclear what, if anything, the parties intended to be enforced. *See, e.g.*, *Cabrera v. Bank*

*of Am., N.A.*, No. 5:11-CV-563-FL, 2013 WL 551697, at *4 (E.D.N.C. Feb. 12, 2013) (reversing magistrate's recommendation and dismissing breach of contract claim where terms of alleged contract were "indefinite" and "le[ft] material portions open for future agreement" ); *Pearsall*, 2015 WL 9223076, at *3 (granting 12(b)(6) motion to dismiss breach of contract claim where allegations failed to demonstrate a meeting of the minds "sufficiently definite" for the court to enforce and "bel[ied] any suggestion that even defendant had settled on terms acceptable to it"); *see also Ridgeway Coal Co. v. FMC Corp.*, 616 F. Supp. 404, 407 (S.D. W. Va. 1985) ("When terms are so vague and indefinite that there is no basis or standard for deciding whether the agreement has been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract.").

Indeed, the lack of any definiteness in the 2008 handwritten document is illustrated by plaintiff's own pleading. In the Preliminary Statement to the complaint, plaintiff alleges that "[i]n 2008," he entered a "contract" with Goggins to write a movie "and book" about Goggins' life. (Compl. Prelim. Statement). However, by paragraph 9 of plaintiff's "facts," the alleged contract has devolved to an "agreement." Moreover, the entirety of the writing, as alleged by plaintiff, mentions only a "feature film" and says absolutely nothing about any "book." (*Id.* ¶ 9). If even plaintiff cannot say what the 2008 handwritten document was, or accurately and consistently describe what it required ("movie" versus "book"), it certainly should not be deemed to have the sufficient definiteness required by the law.

11

At most, the 2008 handwritten document may have simply evidenced the parties' stated mutual desire to work together to create a movie at some point – although even that much is unclear, as it is not alleged who wrote it or whether it was signed by either or both parties. Whatever it was, it did not give rise to an enforceable contract. As such, Castro's breach of contract claim should be dismissed to the extent that it seeks recovery based upon the 2008 handwritten document.

### B. The 2015 Email Failed to Establish a Contract As a Matter of Law Because It Was Indefinite and Omitted Material Terms Necessary for Valid Contract Formation.

Castro's complaint sets forth the 2015 email as follows:

> To Whom It May Concern: Let this serve as a legal document confirming that writer-director Paul Castro is the only person that I grant the right to write and direct the feature film version of my life story and the book version as well. This includes the portrayal of Jackie Goggins Gardner, my mother and her life represented in my story. In my absence, I grant Jackie Goggins Gardner the authority to make any necessary decisions. Any changes to the screenplay or the book must be first granted permission by me, David Goggins in writing. A more detailed version of this document is to come. This letter serves as confirmation that Paul Castro is the only person I grant permission to bring my life story to the world via feature film and/or book. Also, Paul Castro is the only person directing my movie!

(Compl. ¶ 19.)

It is unclear whether plaintiff even contends that the 2015 email was a "contract" that was breached in this case. It was obviously not even sent until 2015 – seven years *after* plaintiff alleges that he and Goggins entered the supposed "agreement" and, apparently, *after* plaintiff had already done the great majority of the work for which he is now seeking compensation. That is to say nothing of the fact that the email was sent in

12

response to plaintiff's seeking "reassurance" that Goggins would "abide by" the alleged 2008 "agreement" that plaintiff could pursue the movie – hardly a ringing endorsement of the argument that either party considered themselves under a "contract" allegedly formed in 2008.

In any event, the 2015 email failed to establish a valid contract for the same reasons that the 2008 Agreement failed to establish a valid contract. Like the 2008 handwritten document, plaintiff did "not include copies of any purported contracts" or "address the apparent absence of such documentation." *M2 Pictures*, 2015 WL 3659506, at *4. The text of the email, as alleged, fails to specify when any agreement would take effect, what the contemplated partnership would entail, how long any agreement would last, how compensation would be determined, and what would happen if either party chose at any time not to pursue the project any longer. Just as with the 2008 handwritten document, the 2015 email fails to show the essential material terms and meeting of the minds required for a valid contract, and is therefore not an enforceable contract. *See, e.g.*, *Cabrera*, 2013 WL 551697, at *4.

Moreover, the 2015 email explicitly states that "[a] more detailed version of this document is to come." (Compl. ¶ 19.) It is well-established that "'if a preliminary contract fails to specify all of its material and essential terms so that some are left open for future negotiations, then there is no way by which a court can determine the resulting terms of such future negotiations.'" *Cty. of Jackson v. Nichols*, 175 N.C. App. 196, 199, 623 S.E.2d 277, 279 (2005) (citation omitted); *see also Boyce,* 285 N.C. at 734, 208

S.E.2d at 695 ("If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement."). Moreover, inclusion of this provision in the rudimentary 2015 email underscores its importance to the parties, who plainly intended to leave "material portions open for future agreement." *Volumetrics Med. Imaging, Inc.*, 243 F. Supp. 2d at 400 (providing that such agreements are "void for indefiniteness"). This Court, therefore, should construe the 2015 email as the preliminary and incomplete statement that the parties intended it to be. *Cf. Nichols*, 175 N.C. App. at 199, 623 S.E.2d at 279 ("If the parties to the contract 'manifest[] an intent not to become bound until the execution of a more formal agreement or document, then such an intent [will] be given effect.'").

Accordingly, Castro's breach of contract claim should be dismissed to the extent that it seeks recovery based upon the 2015 email.

### II. **EVEN IF THE 2008 HANDWRITTEN DOCUMENT COULD BE CONSIDERED A VALID CONTRACT, WHICH IT CANNOT, ANY CLAIM FOR BREACH WOULD BE BARRED BY THE STATUTE OF LIMITATIONS.**

"North Carolina law controls procedural matters such as determining the statute of limitations." *Bardes v. Mass. Mut. Life Ins. Co.,* 932 F. Supp. 2d 636, 642 (M.D.N.C. 2013). The statute of limitations for a breach of contract claim in North Carolina is three years. N.C. Gen. Stat. § 1-52(1) (providing a three-year statute of limitations for an action "[u]pon a contract . . . express or implied"). Indeed, "it is the well-established rule in North Carolina that 'claims for breach of contract . . . must be asserted within three years of the date of the underlying breach.'" *Shoe Show, Inc. v. One-Gateway Assocs.,*

*LLC*, No. 1:10CV13, 2015 WL 5674876, at *13 (M.D.N.C. Sept. 25, 2015) (citations omitted). The three-year statute "begins to run on the date the promise is broken." *Penley v. Penley*, 314 N.C. 1, 20, 332 S.E.2d 51, 62 (1985). "A motion to dismiss under Rule 12(b)(6) is an appropriate method of determining whether the statutes of limitation bar plaintiff's claims if the bar is disclosed in the complaint." *Carlisle v. Keith*, 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005).

As shown above, no valid contract ever existed between Castro and Goggins. In trying to allege a contract, plaintiff seems to rely most heavily on the 2008 handwritten document that plaintiff characterizes as an "Agreement."[4] Assuming for the purposes of argument that the 2008 handwritten document could be construed as a legally enforceable "contract," which it cannot, the three-year statute of limitations ran long ago.

Castro concedes that on October 10, 2009, Goggins informed him that, in regard to whatever endeavor the two may have stated their intentions to work on together in 2008, "[s]o far as I'm concerned this is over." (Compl. ¶ 15.) There is no indication that the parties even spoke for two years following Goggins' declaration that "this is over."

---

[4] Plaintiff's characterization of the 2008 handwritten document as an "Agreement" in the complaint is entitled to no deference on a motion to dismiss. *Woods v. City of Greensboro*, No. 1:14CV767, 2015 WL 8668228, at *7 (M.D.N.C. Dec. 11, 2015) (explaining that the plaintiffs' allegations that the defendants' conduct "created 'a legally valid and enforceable mutual contract . . . between the parties'" was "nothing more than a legal conclusion unsupported by plausible facts"). "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) (citation omitted).

Any statute of limitations period based on an alleged breach of the 2008 handwritten document would have begun on October 10, 2009, and expired on October 10, 2012. Because Castro did not file his complaint in this action until January 8, 2016, any breach of contract claim that he seeks to assert with respect to the 2008 handwritten document is time-barred by the statute of limitations.

### III. CASTRO'S REMAINING ALLEGATIONS FAIL TO ESTABLISH A VALID CONTRACT BETWEEN THE PARTIES: AT BEST, CASTRO HAS ATTEMPTED TO STATE A CLAIM FOR OFFENSIVE PROMISSORY ESTOPPEL, WHICH IS NOT RECOGNIZED UNDER NORTH CAROLINA LAW.

Castro does not appear to allege the existence of documents other than the 2008 handwritten document and the 2015 email in support of his claim. For the sake of completeness, Goggins contends that none of the allegations set forth in the complaint alleges the existence of a valid contract between the parties.

Indeed, the claim that plaintiff has attempted to bring is really more in the nature of "offensive" promissory estoppel. Plaintiff does not denominate his claim as such, and for good reason – "offensive" promissory estoppel is not a recognized claim in North Carolina.

"Promissory estoppel" is a doctrine described in the Restatement (Second) of Contracts as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Lee v. Paragon Grp. Contractors, Inc.*, 78 N.C. App. 334, 339, 337 S.E.2d 132, 135 (1985) (quoting Restatement (Second) of Contracts Section 90 (1979)).

The futility of plaintiff's attempts to find some actual contract or agreement that has been breached is manifest in the complaint. There is no valid and enforceable contract described anywhere in the complaint. What plaintiff really alleges is that he relied on an alleged promise that induced action on his part, and now "injustice" can be avoided only by enforcement of some alleged promise.

Unfortunately for plaintiff, North Carolina courts have applied promissory estoppel only "*defensively*" – usually in the context of the typical waiver or estoppel affirmative defense. *See, e.g.*, *Wachovia Bank v. Rubish*, 306 N.C. 417, 293 S.E.2d 749 (1982) (landlord estopped from charging interest on late rent after informing tenant he would not do so). North Carolina courts have "never recognized [promissory estoppel] as a substitute for consideration" and have "not approved the doctrine for *affirmative* relief," such as plaintiff is seeking here. *Home Elec. Co. of Lenoir v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 543, 358 S.E.2d 539, 541 (1987) (emphasis added). Indeed, this Court has consistently and recently rejected the affirmative use of promissory estoppel in breach of contract cases. *E.g.*, *Reaves v. JP Morgan Chase Bank, N.A.*, No. 1:13CV192, 2014 WL 6810771, at *5 (M.D.N.C. Dec. 2, 2014); *River's Edge Pharm., LLC v. Gorbec Pharm. Servs., Inc.*, No. 1:10CV991, 2012 WL 1439133, at *10. North Carolina law provides plaintiff no relief based on the facts he has alleged.

## CONCLUSION

For the foregoing reasons, Defendant David Goggins respectfully requests that this Motion to Dismiss be granted, and that plaintiff's complaint be dismissed with prejudice.

This the 16th day of March, 2016.

>  */s/ Jonathan P. Heyl*
> Jonathan P. Heyl
> N.C. State Bar No. 25559
> Matthew W. Krueger-Andes
> N.C. State Bar No. 42984
> SMITH MOORE LEATHERWOOD LLP
> 101 North Tryon Street, Suite 1300
> Charlotte, NC 28246
> Telephone: (704) 384-2600
> Facsimile: (704) 384-2800
> Email: jon.heyl@smithmoorelaw.com
> matt.krueger-andes@smithmoorelaw.com
>
> *Attorneys for Defendant David Goggins*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 16th day March, 2016.

>*/s/ Jonathan P. Heyl*
>Jonathan P. Heyl
>N.C. State Bar No. 25559
>Matthew W. Krueger-Andes
>N.C. State Bar No. 42984
>SMITH MOORE LEATHERWOOD LLP
>101 North Tryon Street, Suite 1300
>Charlotte, NC 28246
>Telephone: (704) 384-2600
>Facsimile: (704) 384-2800
>Email: jon.heyl@smithmoorelaw.com
>matt.krueger-andes@smithmoorelaw.com
>
>*Attorneys for Defendant David Goggins*