IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PAUL J. CASTRO,                    )
                                   )
            Plaintiff,             )
                                   )
    v.                             )          1:16CV10
                                   )
DAVID GOGGINS,                     )
                                   )
            Defendant.             )

**<u>MEMORANDUM OPINION AND ORDER</u>**

**OSTEEN, JR., District Judge**

This matter comes before the court on Defendant David

Goggins' Motion to Dismiss. (Doc. 6.) Defendant filed a brief in

support of his motion, (Doc. 7), Plaintiff Paul Castro filed a

Response in Opposition, (Doc. 8),[1] and Defendant filed a Reply,

(Doc. 10). This matter is ripe for resolution and for the

following reasons, this court will deny Defendant's motion.

_____

[1] Briefs filed by a plaintiff – both opening and responsive
– are required to "refer to all statutes, rules and authorities
relied upon." LR 7.2(a)(4). Notably, Plaintiff's response here
as to the existence of a contract cites no authority upon which
he relies (with the exception of a solitary case regarding
stated time for performance (<u>see</u> Doc. 7 at 6)); instead,
Plaintiff's response simply distinguishes authority relied upon
by Defendant. This is not acceptable, as Plaintiff makes
statements as to legal propositions without necessary citations.

# I.    <u>**PARTIES AND FACTUAL BACKGROUND**</u>

At this stage in the case, the facts are presented in the light most favorable to Plaintiff. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). However, before summarizing the facts alleged in the Complaint, this court is compelled to comment on the confusing nature of the allegations contained in this Complaint and, as necessary, how it must construe these allegations, given the claim alleged and the relevant legal precedent.

Specifically, the Complaint purports to allege one claim for breach of contract. (<u>See</u> Complaint ("Compl.") (Doc. 1) at 11.) However, rather than fulfilling its purpose of providing a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), by including "factual content that allows the court to draw the reasonable inference that the defendant is liable," <u>Iqbal</u>, 556 U.S. at 678, this Complaint is, at best, confusing.

For one thing, the Complaint seems to contain significant extraneous material that, in many respects, appears to be completely irrelevant.  For example, it is unclear why Plaintiff would deem it necessary to this breach-of-contract claim to make a number of the allegations against Defendant, such as allegations regarding his child support status or interactions

with charities. (See, e.g., Compl. (Doc. 1) ¶ 22.) This court can see no relationship between these spurious allegations and the breach-of-contract claim asserted here and does not condone any use of the Complaint to air grievances unrelated to the legal claim(s) at issue or to seek to harm the character of an opposing party.

As further evidence of the confusing nature of Plaintiff's allegations, it appears to this court that Plaintiff seeks to allege two different contracts in the Complaint. Specifically, in paragraph 9, Plaintiff alleges that in 2008 he and Defendant entered into "the Agreement" pursuant to which he "would write a feature film about [Defendant's] life story, with [Plaintiff] serving as the sole screenwriter." (Id. ¶ 9.) He thereafter alleges a subsequent writing in paragraph 19, dated February 18, 2015, that reflected Defendant's acknowledgement of another agreement, in which he would grant Plaintiff "permission to bring [Defendant's] life story to the world" and, in exchange, Plaintiff would write the book and/or movie depicting that story. (Id. ¶ 19.)

Despite the largely fluid nature of the allegations stemming from the alleged agreements and the relationship between the parties, in the interest of clarity for this Rule

12(b)(6) motion and for efficiency as this case proceeds, this
court finds it necessary to clarify its construction of these
agreements alleged in the Complaint. As the Supreme Court held
in Ashcroft v. Iqbal, 556 U.S. 662 (2009), under the Rule 8
pleading standard, a complaint does not "suffice if it tenders
'naked assertion[s]' devoid of 'further factual enhancement.'"
Id. at 678 (citation omitted). Instead, a court must look at the
factual assertions in the complaint to determine whether the
plaintiff has sufficiently alleged factual allegations that
support the claim. See id. at 677-80 (citations omitted). In
assessing this Complaint, this court looks to the only claim for
relief, a breach-of-contract claim, which explicitly alleges
that

> [a] valid and enforceable agreement existed between
> the Plaintiff and the Defendant, pursuant to which:
> (a) the Plaintiff would apply his knowledge, skill,
> and industry connections to write and produce a
> feature film about the Defendant's life; and (b) the
> Defendant would grant the Plaintiff exclusive rights
> to write and produce a film about the Defendant's life
> and to bring the Defendant's life story to the world
> via feature film and book.

(Compl. (Doc. 1) ¶ 29.) Upon review of Plaintiff's allegations,
the only allegations that reflect the agreement described in the
claim for relief – an exchange of exclusivity for writing – are
those in paragraph 19, reflecting the 2015 agreement. As for the

-4-

alleged 2008 agreement, notably, it appears to this court that those allegations simply made Plaintiff the <u>sole</u> screenwriter <u>on that specific project</u> and did not provide him with <u>exclusive</u> rights to Defendant's life story, thus distinguishing it from the exchange of promises in the agreement represented in paragraph 29 under the claim for relief.  If the 2008 agreement in paragraph 9 were the only allegation as to an agreement between the parties, this court would likely, as argued by Defendant, find that language to be insufficient to establish a contract granting an <u>exclusive</u> right to Defendant's life story, the alleged basis for Plaintiff's breach-of-contract claim. (<u>See</u> <u>id.</u> ¶ 29.)

In contrast, this court construes the 2015 agreement differently from the alleged 2008 agreement.  Defendant's February 2015 email allegedly states that Plaintiff "is the only person that I grant the right to write and direct the feature film version of [Defendant's] life story and the book version as well." (<u>Id.</u> ¶ 19.) In this Complaint, the existence of an "exclusive" right to Defendant's life story is alleged specifically, and for the first time, in the February 2015 agreement alleged in paragraph 19.

-5-

Because, specifically under the claim for relief, the contract being sued upon is one in which Defendant granted Plaintiff <u>exclusive</u> rights to write and produce a film about the Defendant's life, this court construes the Complaint as alleging a breach of a contract granting <u>exclusive</u> rights to Defendant's life story, as described in the February 18, 2015 writing, (<u>see id.</u> ¶ 19), and not "the Agreement" entered into in 2008. (<u>See id.</u> ¶ 9.)[2] Further, it is not clear from the Complaint, and remains an issue of fact, as to when, if at all, an agreement was formed pursuant to which Plaintiff received exclusive rights to Defendant's life story for purposes of a screenplay and a book.

To further confound matters, in his response to the motion to dismiss, Plaintiff describes the allegations of the Complaint as "a partnership that began in 2008. The essential and material terms of this partnership were as alleged in the Complaint . . . ." (Pl.'s Br. in Opp'n to Mot. to Dismiss

---

[2] As will be described further <u>infra</u>, to form a contract, the parties must reach agreement on the material terms. In this case, it appears that Plaintiff contends exclusivity is a material term of the contract. To the extent that Plaintiff contends the October 2008 statements from paragraph 9 constitute a contract, Plaintiff fails to plausibly allege exclusivity as a material term of that "Agreement," as argued by Defendant in the motion to dismiss.

("Pl.'s Br.") (Doc. 8) at 5.) The existence of an alleged
partnership would significantly affect any legal analysis of
Plaintiff's claim. (See, e.g., Potter v. Homestead Pres. Ass'n,
330 N.C. 569, 412 S.E.2d 1 (1992); Compton v. Kirby, 157 N.C.
App. 1, 577 S.E.2d 905 (N.C. App. 2003).) However, this court
agrees with Defendant's characterization of Plaintiff's
responsive brief and its novel raising of the partnership issue,
specifically that Plaintiff "ambiguously asserts a 'breach' of a
'partnership' between [Defendant] and [Plaintiff] that 'unfolded
through years of conduct, cooperation, and communications
between the parties.' [Plaintiff] cites no authority to support
such a novel (and unpled) theory." (Def.'s Reply (Doc. 10) at
2.) This court determines that a partnership claim is neither
pled nor supported in this case, and thus it will not be
considered in this court's construction of the relevant facts.

Further, this court will not permit the amendment of a
complaint alleging a breach-of-contract claim to include
allegations of a partnership claim without the relevant party
filing a motion to amend the complaint. Plaintiff's attempt to
argue a partnership from the Complaint is not persuasive and
will not be permitted here for purposes of Defendant's motion to
dismiss.

-7-

In light of the foregoing, this court construes the Complaint to allege one claim, specifically, Defendant's breach of a contract that allegedly granted Plaintiff an exclusive right to write and produce a film and book about Defendant's life using Plaintiff's knowledge, skill, and connections. (See Compl. (Doc. 1) at ¶ 29.) This court construes the Complaint to allege, at least by inference, that such a contract was formed sometime after October 2008 and prior to February 2015. Consequently, this court will address the allegations contained in the Complaint only to the extent that they bear on whether the alleged breach-of-contract claim should be dismissed under Defendant's motion.

Plaintiff and Defendant allegedly entered into an agreement pursuant to which Plaintiff would serve as the sole screenwriter and write a feature film about Defendant's life story. (Compl. (Doc. 1) ¶ 9.)[3] Consequently, Plaintiff wrote a script for a movie based on Defendant's life and took steps in preparation for producing the film. (Id. ¶¶ 10-13.)

---

[3] Specifically, they are alleged to have agreed as represented in a handwritten agreement dated October 15, 2008, that stated: "This confirms that Paul Castro and David Goggins will partner on the feature film project about David Goggins' life story. Paul Castro will be the sole screenwriter." (Compl. (Doc. 1) ¶ 9.)

Nevertheless, Plaintiff alleges that, on October 10, 2009, Defendant attempted to terminate the agreement. (Id. ¶ 15.) Plaintiff then alleges that, in late 2011, he and Defendant resumed their business relationship. (Id. ¶ 16.)

In preparation for filming the movie, Plaintiff sought Defendant's reassurance that he would abide by their agreement and that Plaintiff would have the exclusive rights to write and direct any film about Defendant's life, as well as any book about his life. (Id. ¶ 19.) On February 18, 2015, Defendant stated:

> To Whom It May Concern: Let this serve as a legal document confirming that writer-director Paul Castro is the only person that I grant the right to write and direct the feature film version of my life story and the book version as well. This includes the portrayal of Jackie Goggins Gardner, my mother and her life represented in my story. In my absence, I grant Jackie Goggins Gardner the authority to make any necessary decisions. Any changes to the screenplay or the book must be first granted permission by me, David Goggins in writing, a more detailed version of this document is to come. This letter serves as conformation that Paul Castro is the only person I grant permission to bring my life story to the world via feature film and/or book. Also, Paul Castro is the only person directing my movie!

(Id.) Plaintiff alleges that he continued to prepare the film for its scheduled shooting in July 2015. (Id. ¶ 20.) Defendant and Plaintiff attended a February 25th meeting in Los Angeles

–9–

about the movie, at which point all of the critical pieces were in place for the film's production. (Id.)

Immediately after that meeting, however, Defendant refused to move forward with the venture. (Id. ¶ 21.) Plaintiff also alleges that, during this time, Defendant worked with a third-party, Itzler, who published a book about Defendant living with him that included information about Defendant's life story. (See, e.g., id. ¶ 22, 23.) Further, Plaintiff alleges that shortly after that book's publication, Defendant sent an email claiming that he "revoked any and all rights that may have been granted" to Plaintiff as referenced in Defendant's February 18, 2015 email. (Id. ¶ 27.)[4]

Based on these allegations, Plaintiff asserts that a valid and enforceable agreement existed between him and Defendant, pursuant to which Plaintiff would apply his knowledge, skill, and industry connections to write and produce a film about Defendant's life and Defendant would grant Plaintiff exclusive rights to write and produce a film about his life and to bring his life story to the world via film and book. (Id. ¶ 29.) Plaintiff argues that he complied with all his requirements

---

[4] Plaintiff alleges that this email copied Marc Adelman, allegedly a key executive to Itzler who serves or served vital roles in companies founded by Itzler. (Id. ¶ 27.)

under the contract but Defendant repudiated the agreement, in breach of it, (id. ¶ 31), and thus Plaintiff seeks actual and consequential damages, (id. ¶ 32).

## II.  LEGAL STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. Id. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted).

Nevertheless, sufficient factual allegations must "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible."

-11-

<u>Twombly</u>, 500 U.S. at 555, 570; <u>see</u> <u>Iqbal</u>, 556 U.S. at 680. A
court cannot "ignore a clear failure in the pleadings to allege
any facts which set forth a claim." <u>Estate of Williams-Moore</u>,
335 F. Supp. 2d at 646. Consequently, even given the deferential
standard allocated to pleadings at the motion to dismiss stage,
a court will not accept mere legal conclusions as true and
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, [will] not suffice."
<u>Iqbal</u>, 556 U.S. at 678.

## III. <u>ANALYSIS</u>

Defendant makes three main arguments in support of his
motion to dismiss. (Def.'s Mot. to Dismiss ("Def.'s Mot.") (Doc.
6).) First, he argues that the alleged agreements and evidence
of a contractual relationship fail to allege a contract as they
lack definiteness and therefore never formed a valid contract.
(<u>Id.</u> at 2.) Second, if this court finds that a contract existed,
Defendant argues that Plaintiff's breach-of-contract claim, at
least as it relates to the 2008 memorialization of agreement,
would be barred by North Carolina's three-year statute of
limitations per N.C. Gen. Stat. § 1-52(1). (Def.'s Mot. (Doc. 6)
at 2.) Third, in the absence of any contractual basis for suit,
Defendant argues that Plaintiff at best alleges a claim for

-12-

offensive promissory estoppel and that North Carolina law does not recognize such a claim. (Id.) Thus, he moves to dismiss the Complaint with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Id. at 3.)

## A. **Existence of a Contract Between the Parties**

An initial issue of how to characterize Plaintiff's allegations arises. Defendant asserts that there are two possible, but ultimately unsuccessful, grounds for an alleged contract: the 2008 handwritten agreement and Defendant's 2015 email. (See Br. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Br.") (Doc. 7) at 6.) Plaintiff, on the other hand, asserts that Defendant improperly dichotomizes the parties' agreement. (Pl.'s Br. (Doc. 8) at 5.) Both arguments highlight their fundamental source of disagreement: how many details must an agreement include to be considered the full scope of agreement and thus a contract and what terms are material and therefore necessary to be included in this context? This court finds that the alleged email from Defendant in February 2015 represents an allegation containing the required elements of a valid contract and thus, for purposes of Rule 12(b)(6), is sufficient to survive Defendant's current challenge.

In North Carolina, "to have 'a valid and enforceable contract between parties, there must be a meeting of the minds of the contracting parties upon all essential terms and conditions of the contract.'" Apple Tree Ridge Neighborhood Ass'n v. Grandfather Mountain Heights Prop. Owners Corp., 206 N.C. App. 278, 282, 697 S.E.2d 468, 472 (2010) (citation omitted). "[T]he parties must assent to the same thing in the same sense, and their minds must meet as to all the terms." Id. at 282-83, 697 S.E.2d at 472 (internal quotation marks and citation omitted); see also Schlieper v. Johnson, 195 N.C. App. 257, 265, 672 S.E.2d 548, 553 (2009) ("A contract, express or implied, requires assent, mutuality, and definite terms." (citation omitted)); Connor v. Harless, 176 N.C. App. 402, 406, 626 S.E.2d 755, 757-58 (2006) ("Consequently, 'a contract to enter a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations.'" (citation omitted)). In defining those terms, "[e]ssential terms of a contract include the parties, the subject matter of the agreement, and the price to be paid under it." Apple Tree Ridge, 206 N.C. App. at 283, 697 S.E.2d at 472 (citation omitted). "[A] contract is nugatory and void for indefiniteness if it leaves any material portions open for

-14-

future agreement." Connor, 176 N.C. App. at 405-06, 626 S.E.2d at 757 (citation omitted).

Defendant analogizes to Parker v. Glosson, 182 N.C. App. 229, 641 S.E.2d 735 (2007), for the proposition that Plaintiff's claim can be dismissed ("a basis for dismissal in and of itself") because he fails to "allege whose handwriting appears on the 2008 handwritten document, much less whether both parties actually signed it." (Def.'s Br. (Doc. 7) at 9 (citing Parker, 182 N.C. App. at 230, 641 S.E.2d at 736).) However, this court distinguishes Parker from the case at hand.[5] While also addressing a Rule 12(b)(6) motion, Parker specifically involved an agreement attached to the complaint that stated, "This Agreement shall become an enforceable contract when a fully executed copy has been communicated to both parties[]" and clearly reflected that only one party had signed the document. Id. Consequently, the document itself implicated an issue of contract formation – that is, it clearly stated that it would not come into being as an enforceable contract until it was fully executed, i.e., in the court's analysis, signed by both parties. See id. at 233-34, 641 S.E.2d at 738-39. Consequently,

---

[5] This court focuses its analysis on the 2015 email, not the 2008 handwritten document. However, the absence of a signature requirement is equally significant.

-15-

that court determined that the issue there was "one of contract formation, not contract enforceability" per the terms of the attached agreement and because, by attaching the agreement, "[t]he complaint 'disclos[es] . . . [a] fact which will necessarily defeat' plaintiff's claim for breach of contract" that is, "that [the defendant] has not executed the Agreement[,]" dismissal under Rule 12(b)(6) was proper. <u>Id.</u> The facts leading to the conclusion in <u>Parker</u>, however, cannot be properly extrapolated for the premise that Plaintiff seeks to support, given the factual distinctions between the two cases.

Additionally, there is a distinction between a complaint revealing a fact that necessarily defeats the plaintiff's claim, making dismissal proper, as in <u>Parker</u>, and a complaint simply remaining silent on a particular issue, as in the case at hand. Defendant also cited <u>Jiangmen Kinwai Furniture Decoration Co. v. IHFC Props., LLC</u>, No. 1:14-CV-689, 2015 WL 5944278 (M.D.N.C. Oct. 13, 2015), for his proposition regarding signatures, noting parenthetically "that plaintiff [in that case] did 'not allege facts sufficient to impose liability for breach of contract and other contract-based claims on parties who did not sign the contract at issue[.]'" (Def.'s Br. (Doc. 7) at 9 (citing <u>Jiangmen Kinwai Furniture</u>, 2015 WL 5944278, at *5 n.4).) While

the particular opinion cited by Defendant addresses judicial imposition of Rule 11 sanctions, the footnote he cites refers to and quotes an earlier order in the case, issued on May 8, 2015. (Civil Case No. 1:14CV689, May 8, 2015 Order (Doc. 68).) Review of the underlying order[6] makes clear both that the issue in Jiangmen is not analogous to the issues in the current case and that Jiangmen does not support the proposition for which Plaintiff cites it.

Plaintiff takes issue with Defendant's use of Pres. Prof'l Services, LLC v. M2 Pictures, LLC, No. 3:14-CV-589-RJC-DCK, 2015 WL 3659506 (W.D.N.C. May 5, 2015), as instructive. (See Pl.'s Br. (Doc. 8) at 8-9; Def.'s Br. (Doc. 7) at 8-9.) Plaintiff

---

[6] In fuller part, the order stated:

The Court did not deny the motion to amend because it found the proposed new defendants did not operate the furniture market. It denied the motion to amend because the plaintiff did not allege facts sufficient to impose liability for breach of contract and other contract-based claims on parties who did not sign the contract at issue; nor did the plaintiff clearly allege that the proposed new defendants themselves committed the alleged torts. The facts alleged related to corporate organization, and the amended complaint on its face appeared to assert that the new defendants were liable for IHFC's actions merely because they owned and controlled IHFC.

(Civil Case No. 1:14CV689, May 8, 2015 Order (Doc. 68) at 4 (internal citations omitted).)

urges that the current case is distinguishable from <u>M2 Pictures</u>,
as that case only made a "bare assertion, on vague terms, that
such a contract existed", while Plaintiff has alleged and
presented verbatim language, times of contact, and specific
facts of the parties' behavior, meaning that he "has more than
alleged specific facts to support a plausible claim." (Pl.'s Br.
(Doc. 8) at 9.) In <u>M2 Pictures</u>, the court critiqued as follows:

> Although Plaintiffs seem to suggest that there were
> four (4) valid and enforceable contracts between the
> parties that were breached by Defendants, the
> Complaints lacks any explanation of when or where any
> contract was formed, or the terms of such contract(s).
> Moreover, the allegations do not state whether the
> purported contracts were oral or written, how many
> there were, or who negotiated them. The Complaint does
> not include copies of any purported contracts,
> invoices, emails, letters, or other documents; nor
> does it address the apparent absence of such
> documentation."

<u>M2 Pictures</u>, 2015 WL 3659506, at *3 (internal citations
omitted). The court further critiqued that the described
agreement, at best, had unclear terms that contributed to the
failure to "allege a meeting of the minds as to all essential

terms of an agreement." Id. at *4-5.[7] Ultimately, the district court adopted this report and recommendation and dismissed the case. Pres. Prof'l Servs., LLC v. M2 Pictures, LLC, No. 3:14-cv-589-RJC-DCK, 2015 WL 3657463, at *3-5 (W.D.N.C. June 12, 2015) ("Plaintiffs do not cite to any cases to support their contentions nor point to specific factual allegations in the Amended Complaint to demonstrate that such a contract was created between the parties.").

As to compensation, in North Carolina, the price to be paid is a material term. See Apple Tree Ridge, 206 N.C. App. at 283, 697 S.E.2d at 472 ("Essential terms of a contract include . . .

_____

[7] The Court explained:

> The closest the Complaint comes to describing any agreement is the following: "HGTV and M2 promised PresPro that, in exchange for **work on FIF,** PresPro would be **featured** in FIF episodes as the general contractor on **some of the homes** and that Defendants would **promote** PresPro on FIF." The terms of this alleged agreement are unclear: what exactly was the "work on FIF" the parties agreed PresPro would do, and was it completed; what would being "featured" and promoted on FIF entail; what did the parties intend by the language on "some" of the homes; and what if any or all the FIF episodes never aired. This alleged agreement/promise does not include Plaintiff Journey; however, Journey asserts causes of action against each Defendant for breach of "a valid and enforceable contract."

M2 Pictures, 2015 WL 3659506, at *4 (internal citations omitted).

the price to be paid under it." (citation omitted)). Plaintiff asserts, however, that there is no need for agreement on compensation as "Goggins wanted a book and movie made about his life, presumably in part for the intangible benefits he might have derived from such a venture and perhaps in part for the monetary benefits he could derive from other sources." (Pl.'s Br. (Doc. 8) at 7.) While Plaintiff is correct insofar as contracts do not require a financial commitment (i.e., parties could contract for the exchange of services), he is incorrect insofar as he seeks to argue that compensation or the price to be paid is not considered a material term. However, he argues elsewhere that the core of the agreement was "that Castro would apply his knowledge, skill, and industry connections to write and produce a film about Goggins' life and Goggins would give Castro the exclusive rights to do so." (Id. at 10; see also Compl. (Doc. 1) ¶¶ 19, 29.) It is a reasonable inference from Plaintiff's allegations that the price to be paid was simply the exchange of services. See, e.g., E. Carolina Ry. v. Ziegler Bros., 157 S.E. 57, 57 (N.C. 1931) ("It is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made as consideration for the promise made to him. . . . In general, a waiver of any legal right at the

-20-

request of another party is a sufficient consideration for a promise." (internal quotation marks and citations omitted)); see also Lewis v. Lester, 235 N.C. App. 84, 86, 760 S.E.2d 91, 92-93 (2014) ("The essential elements of a valid, enforceable contract are offer, acceptance, and consideration." (citation omitted)). Thus, Plaintiff has sufficiently alleged that compensation was included in the initial agreement, (see Compl. (Doc. 1) ¶¶ 19, 29), meaning that the alleged agreement included essential contractual terms.[8] Significantly, however, this finding is limited to the agreement as alleged in 2015, (id. ¶ 19), as that is the first explicit allegation of an exchange of promises, rather than a general discussion of partnering together that does not inform the contractual analysis.

While a contract does not exist without a meeting of the minds, a party's retroactive and potentially self-serving later claim that minds never met is not a certain indication that the minds did not meet and does not allow the court to necessarily conclude that Plaintiff has not alleged his case adequately, at

---

[8] Although this court finds the Complaint sufficient to survive a motion to dismiss, that holding neither should be construed as establishing an exchange of consideration sufficient to support a contract at later stages of this proceeding nor does it establish the law of the case. Evidence may later establish that any consideration was illusory, that it had no value, or that there was in fact no benefit transferred.

the present time. Here, the actions by the parties may indicate an intention to be bound, particularly at the 12(b)(6) stage.

This court notes Defendant's additional concerns regarding definiteness and whether the alleged agreements encompass a sufficient scope of the agreement, if any, between the parties. The parties need to have "sufficiently definite and certain" "essential terms of the agreement" at the point that their minds allegedly meet. Miller v. Rose, 138 N.C. App. 582, 587-88, 532 S.E.2d 228, 232 (2000); see also Lassiter v. Bank of N.C., 146 N.C. App. 264, 269, 551 S.E.2d 920, 923 (2001) ("As a general matter, a contract must be sufficiently definite in order that a court may enforce it. Furthermore, to be binding, the terms of a contract must be definite and certain or capable of being made so; the minds of the parties must meet upon a definite proposition." (internal quotation marks and citations omitted)). While Defendant makes points regarding potential essential terms, (see, e.g., Def.'s Br. (Doc. 7) at 10), there is no indication that these concepts were necessarily material terms (with the exception of compensation, addressed supra) and thus the parties could have left some more minor terms to future agreement while still forming a contractual agreement at that time. See Miller, 138 N.C. App. at 587-88, 532 S.E.2d at 232

(requiring only that minds meet as to "essential terms" (citations omitted)); Boyce v. McMahan, 285 N.C. 730, 733-34, 208 S.E.2d 692, 695 (1974) (requiring that material portions not be left open for future agreement but not holding minor or non-material terms to this standard). An example of an insufficiently definite agreement was present in Lassiter v. Bank of North Carolina, 146 N.C. App. 264, 551 S.E.2d 920 (2001), where a court granted summary judgment, finding insufficiently definite statements such as, "[h]is promise to 'look after' plaintiffs", his "statement that he 'knew about building' [because it] is not a promise to do anything and therefore can not give rise to a duty on his behalf" and "when [he] said he would make sure the contractor 'has done it right,' he did not explain that he would take any specific action." Id. at 269, 551 S.E.2d at 924 (citations omitted). Persuasively, at the least, the present Complaint alleges that there were specific promises to do something (write and direct the story and give the rights to the story (see Compl. (Doc. 1) ¶ 19) that appear sufficiently definite, at least in the limited context of a 12(b)(6) review, to indicate what the parties contracted to do and to give a definite promise early on as to the agreement. This court is not determining currently whether it actually

-23-

encompassed the terms material to the parties, what the alleged contractual terms mean, or whether Defendant's alleged activity with Itzler would in fact constitute a breach or repudiation. Because the Complaint's allegations, with reasonable inferences, support required contractual elements, the court will deny Defendant's motion as it relates to the sufficiency of Plaintiff's allegations that a contract existed.

## B. Statute of Limitations Defense

Defendant next asserts that, if the court finds that Plaintiff alleged sufficiently the existence of a contract for purposes of Rule 12(b)(6), the alleged breach would have occurred on October 10, 2009, when Defendant emailed Plaintiff that the agreement was over, and the three-year statute of limitations would have expired on October 10, 2012. (Def.'s Br. (Doc. 7) at 14-16.) Because Plaintiff filed suit in early 2016, Defendant argues that the statute of limitations presents a time-bar to Plaintiff's case. (Id. at 16.)

Plaintiff's response is two-fold. First, he argues that Defendant's email was only an attempted repudiation (anticipatory breach) and the statute of limitations was not triggered because Plaintiff did not treat that email as a breach. (See Pl.'s Br. (Doc. 8) at 10-12.) Second, in the

-24-

alternative, he argues that even if the email were a breach, it
was "nullified or retracted in late 2011 (and within the three
year statute of limitations) when the parties resumed their
business relationship." (Id. at 12.) Because a "[r]etraction
[can] nullify the effects of repudiation if done before the
other party [] changes position in reliance on the
retraction . . . [,]" he argues that this nullification prevents
the expiration of the statute of limitations. (Id. (citation
omitted.)) Similarly, even if nullification did not occur, he
argues that equitable estoppel prevents Defendant from now
asserting the statute of limitations, given the resumption of
affairs. (Id.)

    Defendant asserts in response to the repudiation argument
that Plaintiff did in fact treat the email as a repudiation
since he did not treat the agreement "as being 'in effect'" and
stopped work on the script. (Def.'s Reply (Doc. 10) at 7 ("Yet
there are no allegations in the complaint to suggest that Castro
did anything at all in furtherance of the 2008 handwritten
document for more than two years after Mr. Goggins declared
'this is over.' To the contrary, the only plausible inference to
be drawn from Castro's allegations is that Castro, like Goggins,
believed that any agreement between the parties was in fact

'over.'" (citation omitted)). He asserts that Plaintiff's "argument would render the statute of limitations meaningless [because] [i]t would mean that a party . . . could simply decide not to treat a repudiation as a breach in order to prevent the statute of limitations from running[,]" which "would completely undermine the express purpose of the statute of limitations to prevent stale claims . . . ." (Id.) He did not address Plaintiff's argument regarding retraction. (See id. at 7-8.)

"A statute of limitations operates as a complete defense, not for lack of merit, but for security against the attempt to assert a stale claim." Nowell v. Great Atl. & Pac. Tea Co., 250 N.C. 575, 579, 108 S.E.2d 889, 891 (1959). North Carolina provides a three-year statute of limitations for actions "[u]pon a contract, obligation or liability arising out of a contract, express or implied, except those mentioned in the preceding sections or in G.S. 1-53(1)." N.C. Gen. Stat. § 1-52(1).

Because this court grounds its holding as to the sufficiency of Plaintiff's allegations of a valid contract on the February 2015 email, there is no statute of limitations issue present on the face of the Complaint, as three years have not passed from the contract itself, never mind from any alleged breach. However, even if the earlier allegations were to

constitute a contract, persuasive arguments surrounding
retraction and equitable estoppel support the conclusion that a
statute of limitations defense is not sufficiently established
by current pleadings, even though discovery and future evidence
may ultimately support such a conclusion.

Thus, this court will not grant Defendant's motion on the
basis of a statute of limitations defense.

### C. Promissory Estoppel

Because this court does not grant Defendant's motion as to
whether Plaintiff's Complaint alleges a contract, and thus an
alleged breach of that contract, it does not need to address the
argument that alternatively, in lieu of a contract, Plaintiff's
Complaint alleges promissory estoppel.

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that
Defendant's Motion to Dismiss (Doc. 6) is **DENIED**.

This the 25th day of August, 2016.

William L. Osteen, Jr.
_____
                United States District Judge

-27-