IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No. 1:16-cv-10

| PAUL J. CASTRO, | |
|---|---|
| Plaintiff, | |
| v. | ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM |
| DAVID GOGGINS, | |
| Defendant. | |

Defendant David Goggins ("Mr. Goggins"), by and through counsel, hereby files this Answer, Affirmative Defenses, and Counterclaim in response to Plaintiff Paul J. Castro's ("plaintiff") Complaint ("complaint") and states as follows:

## "PRELIMINARY STATEMENT"

Plaintiff's "Preliminary Statement" is not a properly pled allegation of the complaint to which a response is required. To the extent a response is required, Mr. Goggins admits that, in or about 2015, Jesse Itzler authored a book titled "Living with a SEAL," the contents of which speak for themselves. Except as expressly admitted, any allegations contained within the "Preliminary Statement" are denied.

## PARTIES AND JURISDICTION

1. The allegations of paragraph 1 of the complaint are admitted upon information and belief.

2. The allegations of paragraph 2 of the complaint are admitted.

3. It is admitted upon information and belief that plaintiff is a citizen of North Carolina and Mr. Goggins is a citizen of Tennessee. The remaining allegations of paragraph 3 of the complaint contain conclusions of law as to diversity jurisdiction to which no response is required.

4. The allegations of paragraph 4 of the complaint contain conclusions of law as to the Court's personal jurisdiction over Mr. Goggins pursuant to N.C. Gen. Stat. § 1-75.4 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution to which no response is required. Mr. Goggins denies the remaining allegations of paragraph 4 of the complaint.

5. The allegations of paragraph 5 of the complaint contain conclusions of law as to proper venue in this district pursuant to 28 U.S.C. § 1391 to which no response is required. Mr. Goggins denies the remaining allegations of paragraph 5 of the complaint.

**FACTS**

6. Mr. Goggins incorporates by reference his responses to paragraphs 1-5 of the complaint as if fully set forth herein.

7. Mr. Goggins lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 of the complaint and the same, therefore, are denied.

8. Mr. Goggins admits that he met plaintiff while plaintiff was assigned as a public affairs officer for the U.S. Navy. It is denied that Mr. Goggins and plaintiff developed a close friendship. Mr. Goggins lacks knowledge or information sufficient to

2

form a belief as to the truth of the remaining allegations of paragraph 8 of the complaint and the same, therefore, are denied. Except as expressly admitted, the allegations of paragraph 8 of the complaint are denied.

9. Mr. Goggins admits that he is a former Navy SEAL who has gained certain recognition for his athletic endeavors. It is further admitted that in 2008 Mr. Goggins and plaintiff discussed possibly making a film about Mr. Goggins' life story. It is further admitted that any "handwritten" document in existence is a written document, the text of which speaks for itself. Except as expressly admitted, the allegations of paragraph 9 of the complaint are denied.

10. It is denied that there was an "Agreement." It is admitted that plaintiff drafted a script that purported to be about Mr. Goggins' life entitled "The Ultra One." It is further admitted that Jesse Itzler ("Itzler") was a New York resident who was associated with a venture known as Marquis Jet Partners. It is further admitted that Mr. Goggins and Itzler were acquaintances. Mr. Goggins lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 10 of the complaint and the same, therefore, are denied. Except as expressly admitted, the allegations of paragraph 10 of the complaint are denied.

11. It is denied that there was an "Agreement." It is admitted that Mr. Goggins sometimes wore apparel provided to him that was marked "evil." It is further admitted that plaintiff, after seeing Mr. Goggins wearing the apparel marked "evil," drafted a script that included the line by a character that "evil spelled backwards is live." Mr. Goggins

3

Case 1:16-cv-00010-WO-JLW   Document 13   Filed 09/09/16   Page 3 of 19

lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether plaintiff provided a script to Itzler and the same, therefore, are denied. Mr. Goggins lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding any trademarks applied for by Itzler related to "evil" or "the100mileman," and the same, therefore, are denied. It is denied that Mr. Goggins and Itzler intended to, or did, go into business together relating to products associated with the alleged marks in 2008 or 2009. Except as expressly admitted, the allegations of paragraph 11 of the complaint are denied.

      12.    It is denied that there was an "Agreement." It is admitted that Goggins did not participate in the "Race Across America" in 2009 due to health issues. Mr. Goggins lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the alleged communications with plaintiff in or about 2009 and the same, therefore, are denied. Except as expressly admitted, the allegations of paragraph 12 of the complaint are denied.

      13.    Mr. Goggins lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 of the complaint and the same, therefore, are denied.

      14.    It is admitted that Mr. Goggins believed that representations of his life drafted by plaintiff were inaccurate and incorrect and needed to be changed. It is further admitted that the text of any writings exchanged between plaintiff and Mr. Goggins

speaks for itself. Except as expressly admitted, the allegations of paragraph 14 of the complaint are denied.

15. It is admitted that the text of any writings exchanged between plaintiff and Mr. Goggins speaks for itself. It is further admitted that in or about October 2009, Mr. Goggins communicated to plaintiff that "this is over," and plaintiff expressed his reciprocal desire to end with finality whatever relationship they had and to terminate activity on any endeavor they may have been exploring up to that point. Except as expressly admitted, the allegations of paragraph 15 of the complaint are denied.

16. It is admitted that plaintiff contacted Mr. Goggins in or about early 2012. It is further admitted that the text of any writings exchanged between plaintiff and Mr. Goggins at that time speaks for itself. It is further admitted that Mr. Goggins informed plaintiff in early 2012 that any script purportedly about Mr. Goggins' life that plaintiff would like to present for Mr. Goggins' consideration would need to be changed to be truthful and accurate. Except as expressly admitted, the allegations of paragraph 16 of the complaint are denied.

17. It is admitted that the text of any writings exchanged between plaintiff and Mr. Goggins speaks for itself. It is denied that Mr. Goggins approved a final script for production of a movie or consented to plaintiff presenting inaccurate details about Mr. Goggins' life as truthful. Mr. Goggins lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding plaintiff's alleged activities between

5

2012 and 2014 and the same, therefore, are denied. Except as expressly admitted, the allegations of paragraph 17 of the complaint are denied.

19. Mr. Goggins lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 of the complaint and the same, therefore, are denied.

19. It is denied that there was an "Agreement." It is admitted that, at plaintiff's urging and only days in advance of a meeting that plaintiff had arranged at which he was going to present his script to others, Mr. Goggins' mother sent an email to plaintiff on or about February 18, 2015, the text of which speaks for itself. Except as expressly admitted, the allegations of paragraph 19 of the complaint are denied.

20. It is admitted that Mr. Goggins attended a meeting in California on or about February 25, 2015 with plaintiff and a number of other people invited by plaintiff, including an actor. Except as expressly admitted, the allegations of paragraph 20 of the complaint are denied.

21. It is admitted that, on the day after the meeting alleged in paragraph 20 of the complaint, Mr. Goggins informed plaintiff that he did not wish plaintiff to pursue the script further because, despite plaintiff's assurances to the contrary to Mr. Goggins prior to the meeting, plaintiff falsely represented to the attendees at the meeting that his proposed script was an entirely truthful and accurate description of Mr. Goggins' life story when it in fact was not and contained multiple recitations of fictitious and fabricated

events that had never occurred. Except as expressly admitted, the allegations of paragraph 21 of the complaint are denied.

22. The allegations of paragraph 22 of the complaint, specifically including subparts a through d, are denied. Mr. Goggins further responds that the allegations of paragraph 22 of the complaint are extraneous, spurious, immaterial and impertinent to any claims alleged by plaintiff.

23. It is admitted that in or about November 2015, Itzler published a book titled "Living with a SEAL," purporting to describe Itzler's training by an unnamed and unidentified SEAL. It is further admitted that the written contents of the book speak for themselves. It is further admitted that Mr. Goggins has made appearances with Itzler to promote the book, including on a morning television show. Mr. Goggins lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Itzler's alleged announcements and the same, therefore, are denied. Except as expressly admitted, the allegations of paragraph 23 of the complaint are denied.

24. The allegations of paragraph 24 of the complaint are denied.

25. The allegations of paragraph 25 of the complaint, incorporating subparts a through e, are denied. Mr. Goggins further responds that the allegations of paragraph 25 of the complaint are extraneous, spurious, immaterial, and impertinent to any claims alleged by plaintiff.

26. The allegations of paragraph 26 of the complaint are denied.

27. It is denied that there was an "Agreement." It is admitted that the text of any writings exchanged between plaintiff and Mr. Goggins at the alleged time speaks for itself. It is admitted that Marc Adelman was but no longer is associated with Itzler's business enterprises. Except as expressly admitted, the allegations of paragraph 27 of the complaint are denied.

## FIRST CLAIM FOR RELIEF

### (Alleged Breach of Contract)

28. Mr. Goggins incorporates by reference his responses to paragraphs 1-27 of the complaint as if fully set forth herein.

29. The allegations of paragraph 29 of the complaint are denied.

30. The allegations of paragraph 30 of the complaint are denied.

31. The allegations of paragraph 31 of the complaint are denied.

32. The allegations of paragraph 32 of the complaint are denied.

## AFFIRMATIVE AND FURTHER DEFENSES

Mr. Goggins states as follows his affirmative and further defenses to the claims set forth in plaintiff's complaint. By stating any matter as an affirmative defense, Mr. Goggins does not assume the burden of proof on any matter on which plaintiff bears the burden of proof under applicable law.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrines of waiver and/or abandonment.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because no contractual agreement was ever formed due to a lack of a meeting of the minds.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because no contractual agreement was ever formed due to the lack of inclusion of material terms and/or lack of sufficient definiteness.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because any contractual agreement alleged by plaintiff fails due to lack of consideration.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because any contractual agreement alleged by plaintiff fails due to failure of consideration.

## TENTH AFFIRMATIVE DEFENSE

To the extent any contractual relationship may have been formed between plaintiff and Mr. Goggins, which is expressly denied, plaintiff's claims are barred in whole or in part by plaintiff's failure to perform.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent any contractual relationship may have been formed between plaintiff and Mr. Goggins, which is expressly denied, plaintiff's claims are barred in whole or in part by the failure to transfer any benefit.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent any contractual relationship may have been formed between plaintiff and Mr. Goggins, which is expressly denied, plaintiff's claims are barred in whole or in part because Mr. Goggins did nothing to breach any agreement that could have been considered to exist.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that plaintiff has suffered any damages, which is expressly denied, plaintiff has failed to mitigate his damages.

## COUNTERCLAIM

David Goggins, by and through counsel, asserting this counterclaim against Paul J. Castro, alleges and states as follows:

## PARTIES AND JURISDICTION

1. Counterclaim-Plaintiff David Goggins ("Mr. Goggins") is a citizen and resident of Williamson County, Tennessee.

2. On information and belief, Counterclaim-Defendant ("Castro") is a citizen and resident of Alamance County, North Carolina.

3. This case is a civil action in which the matter in controversy exceeds $75,000, and this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTS

5. Mr. Goggins incorporates by reference as if fully set forth herein the allegations of paragraphs 1-4 of his Counterclaim.

6. Mr. Goggins is a former Navy SEAL and participates in a number of extreme athletic competitions and exhibitions.

7. Mr. Goggins began participating in these extreme athletic events following a helicopter crash in which a number of his friends, who were active servicemen, were killed.

8. Mr. Goggins participates in the extreme athletic events with the goal of raising money for the charity Special Operations Warrior Foundation, which awards

11

college scholarships and grants to the children of special operations soldiers who have been killed in the line of duty.

9. In the course of his participation in the athletic events and fundraising, it is estimated that Mr. Goggins has raised approximately $2 million for the Special Operations Warrior Foundation.

10. Mr. Goggins' ability to solicit donations and raise funding for the Special Operations Warrior Foundation and other charities depends, in part, on the reputation that he has worked to build over a number of years.

11. Mr. Goggins also earns income, in part, from engagements as a motivational or inspirational speaker.

12. The demand for Mr. Goggins' motivational or inspirational speaking sessions is dependent, in part, on the reputation that he has worked to build over a number of years.

13. The ability of Mr. Goggins to obtain speaking engagements, and the rate at which he is compensated for such engagements, depends, in part, on the reputation that has worked to build over a number of years.

14. In his complaint for breach of contract in this action, Castro makes multiple allegations that are extraneous, spurious, immaterial, and impertinent to any legal claims alleged by Castro (the "Spurious Allegations").

15. The Spurious Allegations include allegations that "[d]espite [Mr. Goggins'] attempt to cultivate a public persona of honor and integrity, [Mr. Goggins] has for years

resisted attempts to support his minor child." (Compl. ¶ 22(b)) (the "Child Support Allegation"). The Child Support Allegation has no legal relevance to the breach-of-contract claim asserted by Castro.

16. The Child Support Allegation is false. Mr. Goggins has never resisted, or missed, a child support payment.

17. The Child Support Allegation is made as a statement of undisputed fact, and is not qualified in any way, including by any qualification that it is made "on information and belief."

18. The Child Support Allegation is an obvious attempt to convey that, "despite" trying to cultivate a "public persona" of honor and integrity, Mr. Goggins in fact lacks honor and integrity.

19. The Child Support Allegation was made with actual malice, as it is unrelated to the legal claims at issue and seeks to harm the character and reputation of Mr. Goggins, solely on the basis of a personal grievance by Castro.

20. Castro's Spurious Allegations additionally include, without limitation, the allegation that Mr. Goggins "has repeatedly misrepresented the extent to which charities were in fact receiving the funds he claimed to be raising for them." (Compl. ¶ 22(d)) (the "Charitable Misrepresentation Allegation"). The Charitable Misrepresentation Allegation has no legal relevance to the breach-of-contract claim asserted by Castro.

21. The Charitable Misrepresentation Allegation is false.

13

22. The Charitable Misrepresentation Allegation is made as a statement of undisputed fact, and is not qualified in any way, including by any qualification that it is made "on information and belief."

23. The Charitable Misrepresentation Allegation was made with actual malice, as it is unrelated to the legal claims at issue and seeks to harm the character and reputation of Mr. Goggins, solely on the basis of a personal grievance by Castro.

24. Castro's Spurious Allegations additionally include the allegation that slogans and expressions used by Mr. Goggins were appropriated from others without proper attribution. (Compl. ¶ 22(a)) (the "False Attribution Allegation"). The False Attribution Allegation has no legal relevance to the breach-of-contract claim asserted by Castro.

25. The False Attribution Allegation is false.

26. The False Attribution Allegation is made as a statement of undisputed fact, and is not qualified in any way, including by any qualification that it is made "on information and belief."

27. The False Attribution Allegation was made with actual malice, as it is unrelated to the legal claims at issue and seeks to harm the character and reputation of Mr. Goggins, solely on the basis of a personal grievance by Castro.

28. Castro's Spurious Allegations additionally include, without limitation, the allegation that Mr. Goggins has "repeatedly misrepresented" historical facts about himself, his family, and his health. (Compl. ¶ 22(c)) (the "Personal Misrepresentation

Allegation"). The Personal Misrepresentation Allegation has no legal relevance to the breach-of-contract claim asserted by Castro.

29. The Personal Misrepresentation Allegation is false.

30. The Personal Misrepresentation Allegation is made as a statement of undisputed fact, and is not qualified in any way, including by any qualification that it is made "on information and belief."

31. The Personal Misrepresentation Allegation was made with actual malice, as it is unrelated to the legal claims at issue and seeks to harm the character and reputation of Mr. Goggins, solely on the basis of a personal grievance by Castro.

32. Collectively and individually, the Spurious Allegations serve to damage Mr. Goggins' ability to, among other things, raise money for charitable endeavors and seek and obtain engagements as a motivational or inspirational speaker.

**COUNT I: DEFAMATION**

33. Mr. Goggins incorporates by reference paragraphs 1-32 of his Counterclaim as if fully set forth herein.

34. Each of the Spurious Allegations, including the Child Support Allegation, the Charitable Misrepresentation Allegation, the False Attribution Allegation, and the Personal Misrepresentation Allegation, is false.

35. Each of the Spurious Allegations is defamatory, impugning the character of Mr. Goggins by attempting to suggest that he misappropriates property, resists family and

15

financial obligations, misrepresents his personal history, and diverts funds that he raises for charity.

36. Each of the Spurious Allegations is of or concerning Mr. Goggins, as each specifically references him by name in associating him with the defamatory allegations.

37. Each of the Spurious Allegations was published to a third person by means of publication in a federally filed action, which, in addition, is electronically posted to the nationwide PACER pleading database.

38. Each of the Spurious Allegations has caused damage to Mr. Goggins' reputation.

39. Castro maliciously made the Spurious Allegations with knowledge that they were false or with reckless disregard as to whether they were false or not.

40. The Spurious Allegations, when considered alone without explanatory circumstances, tend to subject Mr. Goggins to ridicule, contempt, or disgrace, as they impugn the character of Mr. Goggins by attempting to suggest that he misappropriates property, resists family and financial obligations, misrepresents his personal history, and diverts funds that he raises for charity.

41. The Spurious Allegations are subject to but one meaning and can be presumed as a matter of law to disgrace or degrade Mr. Goggins.

42. The Spurious Allegations are of such nature that they hold Mr. Goggins up to public hatred, contempt or ridicule, or cause him to be shunned or avoided, insofar as they impugn the character of Mr. Goggins by attempting to suggest that he

16

misappropriates property, resists family and financial obligations, misrepresents his personal history, and diverts funds that he raises for charity.

43. The Spurious Allegations constitute libel per se, and therefore damages are presumed as a matter of law.

44. Castro's Spurious Allegations are not entitled to any privilege based on being made in the course of judicial proceedings, as they are irrelevant and impertinent to the subject matter of the action, are unrelated to the legal claims at issue, and would not be a proper subject of legal inquiry at trial of Castro's breach-of-contract claim.

WHEREFORE, Mr. Goggins prays that:

1. The Court dismiss plaintiff Castro's complaint with prejudice and deny each and every claim for relief therein;

2. The Court order Castro to pay to Mr. Goggins the direct, consequential, and special damages to which Mr. Goggins may be entitled pursuant to law based on the wrongful actions of Castro as set forth in Mr. Goggins' Counterclaim;

3. The Court award Mr. Goggins punitive damages as may be allowed by law;

4. The Court award Mr. Goggins his costs and attorneys' fees as may be allowed by law;

5. All issues so triable be tried to a jury; and

6. The Court award such other and further relief as it deems just and proper.

This the 9th day of September, 2016.

                                        */s/ Matthew W. Krueger-Andes*
                                        Jonathan P. Heyl
                                        N.C. State Bar No. 25559
                                        Matthew W. Krueger-Andes
                                        N.C. State Bar No. 42984
                                        SMITH MOORE LEATHERWOOD LLP
                                        101 North Tryon Street, Suite 1300
                                        Charlotte, NC 28246
                                        Telephone: (704) 384-2600
                                        Facsimile: (704) 384-2800
                                        Email: jon.heyl@smithmoorelaw.com
                                        matt.krueger-andes@smithmoorelaw.com

                                        *Attorneys for Defendant David Goggins*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 9th day September, 2016.

>*/s/ Matthew W. Krueger-Andes*
>Jonathan P. Heyl
>N.C. State Bar No. 25559
>Matthew W. Krueger-Andes
>N.C. State Bar No. 42984
>SMITH MOORE LEATHERWOOD LLP
>101 North Tryon Street, Suite 1300
>Charlotte, NC 28246
>Telephone: (704) 384-2600
>Facsimile: (704) 384-2800
>Email: jon.heyl@smithmoorelaw.com
>matt.krueger-andes@smithmoorelaw.com
>
>*Attorneys for Defendant David Goggins*