# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PAUL J. CASTRO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV10 |
| | ) | |
| DAVID GOGGINS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon Plaintiff Paul J. Castro's motion to dismiss Defendant David Goggins' counterclaim for defamation. (Docket Entry 14.) Defendant has filed a response in opposition to Plaintiff's motion. (Docket Entry 19.) Plaintiff thereafter filed a reply. (Docket Entry 20). This matter is now ripe for disposition. For the reasons that follow, the Court will recommend that Plaintiff's motion to dismiss Defendant's counterclaim be denied.

## I. BACKGROUND

This action arises from a purported contractual agreement between Plaintiff and Defendant regarding the portrayal of Defendant's life story for purposes of a screenplay and a book. (*See generally* Complaint, Docket Entry 1.) Plaintiff, a professional writer, alleges that Defendant, a former Navy Seal, gave Plaintiff exclusive rights to Defendants' personal story.

(*Id.*) As a result of the agreement between parties,[1] Plaintiff wrote a script about Defendant's life and upon reassurance, aggressively continued to prepare the script for movie production. (*Id.* ¶¶ 10, 12-13.) Defendant subsequently sought some changes which Plaintiff agreed to do. (*Id.* ¶ 14.) Defendant then attempted to terminate the agreement, but the parties later mended their relationship and Plaintiff continued to revise and refine the movie script. (*Id.* ¶¶ 15-17.) Defendant finally approved the final script, and Plaintiff continued other work, including recruiting a top producer and obtaining a twelve million dollar funding commitment to produce the movie. (*Id.* ¶¶ 17-18.) In a written document, Defendant again reassured Plaintiff that he would have exclusive rights to write a book and film about Defendant's life. (*Id.* ¶ 18.) Despite such aggressive efforts by Plaintiff, Defendant subsequently refused to move forward with the parties' agreement. (*Id.* ¶¶ 21, 27.)

Plaintiff asserts that the breach of the parties' agreement was primarily the result of Defendant's relationship with a New York-based entrepreneur, Jesse Itzler ("Itzler"). (*Id.* ¶ 10.) Itzler developed a relationship with Defendant after Plaintiff and Defendant entered the agreement. (*Id.* ¶¶ 10-11.) Itzler and Defendant intended to do business together. (*Id.*) Itzler

---

[1] In an order on a motion by Defendant to dismiss this action for failure to state a claim, the Court referenced the "confusing nature of Plaintiff's allegations" and specifically sought to understand the contract in dispute. *Castro v. Goggins*, No. 1:16CV10, 2016 WL 4508349, at *1-2 (M.D.N.C. Aug. 26, 2016). The Court noted what appeared to be two separate contract references, one in 2008 and one in 2015. (*Id.* at *1.) The Court concluded that

> [b]ecause, specifically under the claim for relief, the contract being sued upon is one in which Defendant granted Plaintiff *exclusive* rights to write and produce a film about the Defendant's life, this court construes the Complaint as alleging a breach of a contract granting *exclusive* rights to Defendant's life story, as described in the February 18, 2015 writing[.]

(*Id.* at *2) (emphasis in original).

was aware of the script written by Plaintiff, and was given a copy of it. (*Id.*) Itzler applied for trademarks in connection with a concept in the movie script known as "evil." (*Id.* ¶ 11.) He eventually published a book entitled "Living with a SEAL," whereby he purports to recount a 31-day live-in with Defendant in Itzler's home. (*Id.* ¶ 23.) Defendant and Itzler have made joint appearances to promote the book. (*Id.*)

Plaintiff's complaint details numerous other allegations about factual inconsistencies about Itzler's book. (*Id.* ¶ 25.) Additionally, Plaintiff alleges that he aggressively continued to fulfill his obligations, even though he discovered that:

   a. Many of the slogans and expressions employed by [Defendant] and with which [Defendant had] become most known by the public were in fact appropriated by [Defendant] from others, without proper attribution;

   b. Despite [Defendant's] attempt to cultivate a public persona of honor and integrity, [Defendant had] for years resisted attempts to support his minor child, resulting just last month in an order against him for unpaid child support in a proceeding in Lake County, Illinois;

   c. [Defendant had] repeatedly misrepresented certain facts in his history and that of his family, including certain alleged health related incidents; and

   d. [Defendant had] repeatedly misrepresented the extent to which charities were in fact receiving the funds he claimed to be raising for them.

(*Id.* ¶¶ 22(a) – (d).) Plaintiff's complaint alleges one cause of action, a breach of contract claim, whereby Plaintiff seeks actual and consequential damages in excess of $75,000.00. (*Id.* ¶¶ 28-32.)

After the filing of the complaint, Defendant filed a motion to dismiss for failure to state a claim. (Docket Entry 6.) The Court entered an order denying the motion. *Castro*, 2016 WL 4508349, at *9. Defendant thereafter filed an answer and asserted a counterclaim against Plaintiff for defamation. (Docket Entry 13.) Specifically, Defendant's defamation claim

3

targets the allegations made in paragraph 22 of Plaintiff's complaint as stated above. Defendant asserts that the allegations are false and serve to damage his character. (*Id.* ¶¶ 32, 34.) Defendant also asserts that such statements are not entitled to any privilege "as they are irrelevant and impertinent to the subject matter of the action[.]" (*Id.* ¶ 44.) Plaintiff has filed a motion to dismiss Defendant's counterclaim, asserting the affirmative defense of litigation privilege for statements made during the course of judicial proceedings. (Docket Entry 14.)

## II. DISCUSSION

Plaintiff argues that dismissal of Defendant's counterclaim is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons & United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is *plausible* on its face.") (emphasis in original) (internal citation and quotation marks omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet*

*Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

In his supporting brief, Plaintiff asserts that the Court should analyze his motion based upon Tennessee state law. "[I]n an action based upon diversity of citizenship, as here, the district court must 'apply the substantive law of the state in which it sits, including the state's choice of law rules.'" *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 723 (M.D.N.C. 2012) (citing *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004)). North Carolina courts have "consistently adhered to the lex loci rule in tort actions." *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988). Applying the lex loci rule, the Court must look at the law of the place where the wrong occurred for the applicable substantive law. *Clayton v. Burnett*, 135 N.C. App. 746, 748, 522 S.E.2d 785, 786 (1999); *Boudreau*, 322 N.C. at 335, 368 S.E.2d at 854.

In regard to defamation claims, "the place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties." *Wells v. Liddy*, 186 F.3d 505, 521-22 (4th Cir. 1999); *see also Verona v. U.S. Bancorp*, No. 7:09-CV-057-BR, 2011 WL 1252935, at *10 n.6 (E.D.N.C. Mar. 29, 2011) ("Although the court could not locate a North Carolina case directly on point, the general rule for defamation claims is the place of harm is the place of publication."). However, "[n]either the North Carolina Supreme Court nor the Court of Appeals has had the opportunity to apply lex loci

to multi-state publication of an allegedly defamatory statement." *Nobles v. Boyd*, No. 7:14-CV-214-FL, 2015 WL 2165962, at *4 (E.D.N.C. May 8, 2015), *appeal dismissed* (July 31, 2015). Thus, sitting in diversity, this Court must determine how the North Carolina Supreme Court would rule on this issue. *Wells*, 186 F.3d at 527-28. The Fourth Circuit Court of Appeals has further noted:

> In predicting a decision of the state's highest court we can further consider, among other things, canons of construction, restatements of the law and treatises that are regularly applied by the courts of the state and whose use for a particular purpose is approved by the state's highest court . . . recent pronouncements of general rules or policies by the state's highest court . . . or even that court's well considered dicta[.]

*Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992) (internal citations omitted). North Carolina courts maintain "strong adherence to the traditional application of the *lex loci deliciti* doctrine when choice of law issues arise[.]" *Mosqueda v. Mosqueda*, 218 N.C. App. 142, 150, 721 S.E.2d 755, 761 (2012) (internal quotations and citations omitted). Considering such, at least one sister court has found the place of residency to be the place of harm where multi-state publication of defamatory statements has occurred. *See Nobles*, 2015 WL 2165962, at *5 (concluding that the state of California was the place where the defamation was communicated and where plaintiff's reputation was injured as a result of his residency and his professional connections in the state); *Ascend Health Corp. v. Wells*, No. 4:12-CV-00083-BR, 2013 WL 1010589, at *2 (E.D.N.C. Mar. 14, 2013)("The court predicts that in a case of multistate defamation, while still adhering to the lex loci delicti rule, the North Carolina Supreme Court would apply Texas law because the alleged injury to plaintiffs . . . is centered in Texas, as that state is where [the plaintiffs] are located . . . .").

6

Consistent with our sister jurisdiction, the Court here concludes that Tennessee law should apply to Defendant's defamation claim. Defendant is a citizen and resident of Tennessee, thus any form of reputational injury would most likely be centered there. Under Tennessee law, to set forth a prima facie case of defamation, "the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). "The basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation." *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994).

Tennessee has long recognized the litigation privilege which allows protection of statements made in the course of judicial proceedings. *Jones v. Trice*, 210 Tenn. 535, 538, 360 S.W.2d 48, 50 (1962). In *Issa v. Benson*, the Tennessee Court of Appeals explained:

> [Tennessee] further recognizes that statements made in the course of judicial proceedings which are relevant and pertinent to the issues are absolutely privileged and therefore cannot be used as a basis for a libel action for damages. This is true even if the statements are known to be false or even malicious. The policy underlying this rule is that access to the judicial process, freedom to institute an action, or defend, or participate therein without fear of the burden of being sued for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of an individual to a legal remedy where he [or she] has been wronged thereby.

420 S.W.3d 23, 28 (Tenn. Ct. App. 2013) (internal quotations and citations omitted).[2] As to the questions of relevancy, "[i]t is clear from the authorities that the words 'pertinent or

---

[2] Both parties note, and the Court agrees, that application of North Carolina law would not alter the outcome of this analysis. Both states have similar rules. Under North Carolina law, "a defamatory statement made in due course of a judicial proceeding is absolutely privileged and will not support a

7

relevant' do not mean relevant within the technical rules of evidence." *Jones*, 210 Tenn. at 547, 360 S.W.2d at 54. Essentially, "[t]he matter to which the privilege does not extend must be so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety." *Id.* at 546, 360 S.W.2d at 53-54 (internal quotations and citation omitted). When analyzed, "this concept [of litigation privilege] is to be liberally construed in order to insure unfettered access to the judicial process." *Bradfield v. Dotson*, No. 02A01-9902-CV-00060, 1999 WL 628086, at *4 (Tenn. Ct. App. Aug. 16, 1999) (citation omitted). Whether the privilege exists is a question of law for the judge. *Jones*, 210 Tenn. at 545, 360 S.W.2d at 53.

Here, Plaintiff contends that the statements are privileged for four reasons. First, Plaintiff suggests that the allegations in paragraph 22 of his Complaint demonstrate his "determination to produce the screenplay, notwithstanding his belief as to [the] particular facts," which somehow illustrate a meeting of the minds between the parties. (Docket Entry 15 at 7.) Plaintiff asserts that the use of his "poetic license" was necessary to bring "Defendant's 'life story' to film." (*Id.*) In his reply brief, Plaintiff further states that it is highly plausible that the parties' alleged agreement is a unilateral contract, thus Plaintiff's unilateral efforts, which include the exercising of his poetic license "in light of the true facts," would be "squarely relevant to the issue of whether an enforceable contract existed[.]" (Docket Entry 20 at 3.)

---

civil action for defamation, even though it be made with express malice." *Harman v. Belk*, 165 N.C. App. 819, 824, 600 S.E.2d 43, 47 (2004) (internal quotations and citation omitted). When making a determination of whether a statement is absolutely privileged, "a [North Carolina] court must determine (1) whether the statement was made in the course of a judicial proceeding; and (2) whether it was sufficiently relevant to that proceeding." *Id.* (quotation omitted).

Under North Carolina law,[3] "[i]t is essential to the formation of any contract that there be mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." *Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 550, 613 S.E.2d 322, 327 (2005) (internal quotations and citation omitted); *see also Creech v. Melnik*, 347 N.C. 520, 527, 495 S.E.2d 907, 912 (1998) ("When there has been no meeting of the minds on the essentials of an agreement, no contract results.") (internal quotations and citation omitted). Specifically "in the context of a unilateral contract, a meeting of the minds can exist when a party thereto accepts an offer by action not by words." *State v. Sanders*, 208 N.C. App. 142, 146, 701 S.E.2d 380, 383 (2010). Here, even given the most liberal reading, there is nothing in the defamed allegations that will advance Plaintiff's argument that a meeting of the minds existed, nor will it be relevant to any defense against such argument. For example, the allegations related to Defendant's unpaid child support bear no relevance as to whether there was a meeting of the minds as to the alleged exclusive rights contract between the parties. Likewise, Defendant's alleged misappropriated slogans, misrepresented family health history, and misrepresented charity contributions bear no relevance to the subject matter of this action. Thus, this argument fails.

Plaintiff's remaining arguments also fail. He argues that the allegations are relevant to the defenses of performance and lack of consideration, and to the issue of damages. (Docket Entry 15 at 7-9). Essentially Plaintiff asserts that based upon the communications of the parties, it could have been anticipated, and Defendant did in fact, assert a defense that Plaintiff

---

[3] Contract formation regarding Plaintiff's underlining breach of contract claim is appropriately analyzed under North Carolina law.

9

failed to fulfill his obligations under the parties' agreement. (*Id.* at 8; *see also* Def.'s Tenth Affirmative Defense, Docket Entry 13 at 10.) He further states that his "understanding, as a screenwriter, of what the 'real story' of the Defendant's life may be, is therefore directly relevant to whether [Plaintiff] fulfilled his obligations[.]" (Docket Entry 15 at 8.) Assuming arguendo that Plaintiff's understanding of Defendant's real life story is germane to the issue of whether Plaintiff performed under the agreement, Plaintiff cites no case law nor does he draw any logical conclusion as to how known omitted information can prove he fulfilled his obligation to depict Defendant's "real life" story. More importantly, there are no basis to infer any relevance of these allegations to Plaintiff's performance upon the alleged exclusive rights contract. Likewise, Plaintiff fails to show any relevance of these allegations to any lack of consideration defense, or to the issue of damages.

In sum, the statements in paragraph 22 of Plaintiff's complaint lack any showing of "reasonabl[e] relevan[cy] to the judicial proceedings" here. *Jones*, 210 Tenn. at 547, 360 S.W.2d at 54. To the extent Plaintiff relies upon *Jones*, the facts here are distinguishable. In *Jones*, the plaintiff (Jones) was in constant attendance in a trial whereby the defendant (Trice) was a defendant in another case. (*Id.* at 537, 360 S.W.2d. at 49.) At the conclusion of the trial, Trice moved for a new trial on the grounds of improper jury influence by Jones. (*Id.* at 537, 360 S.W.2d. at 49-50.) Jones then sued Trice for libel based upon Trice's statements made in her motion for a new trial. (*Id.* at 537, 360 S.W.2d. at 49.) Trice demurred on the grounds of absolute privilege because the statements were made during the course of judicial proceedings. (*Id.* at 537-38, 360 S.W.2d. at 50.) On appeal, the Supreme Court of Tennessee affirmed the trial court's order sustaining the demurrer. (*Id.* at 548, 360 S.W.2d. at 55.) That court held

that the relevancy of the affidavit detailing the libelous statements "seem[ed] sufficiently clear." (*Id.* at 547, 360 S.W.2d. at 54.) In the present case, the relevancy of Plaintiff's allegations in question is all but clear. Indeed, this Court has previously raised such concerns. In a recent memorandum opinion and order, Chief District Judge William L. Osteen, Jr. stated:

> [T]he Complaint seems to contain significant extraneous material that, in many respects, appears to be completely irrelevant. For example, it is unclear why Plaintiff would deem it necessary to this breach-of-contract claim to make a number of the allegations against Defendant, such as allegations regarding his child support status or interactions with charities. This court can see no relationship between these spurious allegations and the breach-of-contract claim asserted here[.]

*Castro*, 2016 WL 4508349, at *1.

In conclusion, the Court finds that the allegations at issue in paragraph 22 of Plaintiff's complaint are "so palpably irrelevant to the subject matter of the controversy" in the pending contract dispute "that no reasonable man can doubt its irrelevancy and impropriety." *Jones*, 210 Tenn. at 546, 360 S.W.2d at 53-54 (internal quotations and citation omitted). Because such statements are not protected by the litigation privilege, Plaintiff's motion to dismiss Defendant's counterclaim should be denied.

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that the Plaintiff's motion to dismiss Defendant's counterclaim (Docket Entry 14) be **DENIED**.

Joe L. Webster
United States Magistrate Judge

December 12, 2016
Durham, North Carolina